UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAINMAKERS PARTNERS, LLC,

                    Plaintiff,

        – against –

NEWSPRING CAPITAL, LLC,
NEWSPRING HOLDINGS, LLC, *and*
NSH III MANAGEMENT COMPANY,
LLC,

                    Defendants.

**OPINION & ORDER**

21 Civ. 6800 (ER)

R_AMOS_, D.J.:

        RainMakers Partners, LLC brings this action against NewSpring Capital, LLC

("NewSpring Capital"), NewSpring Holdings, LLC ("NewSpring Holdings"), and NSH III

Management Company, LLC ("NSH") (collectively, "NewSpring") for breach of contract and

misappropriation of trade secrets.  Doc. 1.  RainMakers filed a motion on December 17, 2021, to

revoke the *pro hac vice* admission of Paul K. Leary, an attorney for NewSpring.  Doc. 53.

RainMakers also filed a motion to compel discovery on January 14, 2022 concerning all

investments made by any one of thirty-one entities that RainMakers had identified for potential

investments in NewSpring ("Introduced Investors").  Doc. 58.  On February 4, 2022, NewSpring

filed a cross-motion for partial summary judgment.  Doc. 59.  For the reasons set forth below,

RainMakers' motions to disqualify counsel and to compel discovery are DENIED, and

NewSpring's cross-motion for partial summary judgment is GRANTED.

I.      **BACKGROUND**

A. **Advisory Agreement**

RainMakers and NewSpring Capital are both private equity firms.  Docs. 1, 16.  NSH sought to raise capital for NewSpring Health Capital III, L.P. (the "Fund").  In accordance therewith, on April 2, 2019, NSH engaged RainMakers as a "non-exclusive advisor" to help fundraise with respect to the transaction.[1]  Doc. 60-2 at 2.  In an advisory agreement signed on that date, RainMakers agreed to provide advisory services to NSH in connection with its fundraising process.  *Id.*  Specifically, the advisory agreement stated:

RainMakers shall provide the following services:

(a)  Initiating contact with Introduced Investors;

(b)  Facilitating discussions between NSH and Introduced Investors by coordinating and participating in conference calls and/or meetings between the parties.

(c)  Counseling NSH as to the strategy and tactics for negotiating with Introduced Investors, and if requested by NSH, participating in such negotiations[.]

*Id.*

The advisory agreement defined "Introduced Investor" as an investor that had been "identified by RainMakers and approved by NSH for introduction by RainMakers."  *Id.* Compensation for RainMakers under the agreement included a retainer fee, as well as possible placement fees and successor fees.  *Id.* at 3.  NSH would pay RainMakers a placement fee if "one or a series of Transactions is consummated by NSH with one or several Introduced Investors."  *Id.*

---

[1] The advisory agreement defines "Transaction" as "any transaction . . . whereby, directly or indirectly, an Introduced Investor . . . makes an investment in the Fund."  Doc. 60-2 at 2.

RainMakers provided NewSpring with a list of Introduced Investors that included thirty-one entities.  *Id.* at 9.  NewSpring argues, however, that of these entities, RainMakers only facilitated meetings with three—New2nd Capital ("New2nd"), Industry Ventures, and J.P. Morgan—and not with the other twenty-eight entities.  Specifically, and as relevant to this motion, NewSpring argues that RainMakers did not introduce Northleaf Capital Partners, Ltd. ("Northleaf"), one of the entities on the list, in connection with the advisory agreement.  Doc. 61 ¶ 5.

An addendum to the advisory agreement was executed on June 4, 2019.  Doc. 60-3. NewSpring argues that the parties executed the addendum because New2nd, one of the three entities that RainMakers introduced, "was interested in jointly investing in both [the Fund], as well as [NewSpring Holdings]."  Doc. 61 ¶ 6.  NewSpring references an email sent by Mr. Soleymanlou to show that the intent of the addendum was to cover the eventuality that New2nd would invest in NewSpring Holdings.  *Id.* at ¶ 11.  The addendum was meant to ensure that RainMakers would be compensated if New2nd consummated an investment in NewSpring Holdings.  *Id.* at ¶ 7.  The addendum extended the definition of "Fund" to "any investment vehicle or co-investments managed or offered by NewSpring Capital, LLC," and specified that such investments would be "subject to a Placement Fee as described in section 4-b of the Agreement."  Doc. 60-3 at 2.  The addendum also stated that "[e]xcept as expressly supplemented herein, all terms, covenants and provisions of the Agreement shall remain unaltered."  *Id.*

The Fund closed in February 2020.  Doc. 60-5 ¶ 24.  Ultimately, none of the three Introduced Investors invested in the Fund, and New2nd did not invest in NewSpring Holdings. Doc. 61 ¶ 8.

On June 14, 2021, more than two years after the parties signed the advisory agreement, and fifteen months after the Fund closed, NewSpring announced a $120 million investment by Northleaf in NewSpring Holdings pursuant to a transaction known as "Project Tiger."  Doc. 6-4.  Project Tiger was separate from the Fund, and was meant to recapitalize an existing investor of NewSpring Holdings.  Doc. 16 at 11.  For Project Tiger, NewSpring had worked with another agent, Triago Americas, Inc., which facilitated the involvement of Northleaf.  Doc. 60 at 5.  RainMakers emailed NewSpring on July 1, 2021, requesting a $2.4 million placement fee with respect to this investment.  Doc. 6-5.  The amount RainMakers requested equaled the amount that it would have been entitled to for facilitating the transaction under the terms of the advisory agreement.  NewSpring replied via email on July 2, 2021, responding that RainMakers did not provide the services required for the placement fee.  Doc. 6-6.

### B. *Pro Hac Vice*

On November 29, 2021, after the commencement of this suit, this Court granted a motion by Paul K. Leary, Jr., an attorney for NewSpring, for admission to appear *pro hac vice*.  Doc. 45.  Reeves Carter, an attorney for RainMakers, wrote a letter to this Court on December 14, 2021, requesting that the Court deny the *pro hac vice* application by Mr. Leary (followed by a motion to revoke admission three days later, after learning that the *pro hac vice* motion had already been granted).  Docs. 48, 53.  In support of his request, Mr. Carter asserted that Mr. Leary had called Mr. Carter a "shit head" in an email.[2]

The dispute that inspired the colorful language concerned an email from Mr. Leary in which he wrote that Travis Escobedo, a former employee of NewSpring, was an employee of NewSpring at the time of his email, and therefore it would be unethical for RainMakers to

---

[2] Mr. Leary's email was in response to an email in which Mr. Carter called Mr. Leary a "sloppy liar."  Doc. 53 at 10–11.

4

contact Mr. Escobedo.  Doc. 53 at 10–11.  Mr. Leary later clarified that Mr. Escobedo was indeed a former employee, but that he would represent Mr. Escobedo if RainMakers intended to depose him.  *Id.*  Separately, RainMakers asserts that Mr. Leary acted improperly when, in another email, he suggested that Jim Soleymanlou, President of RainMakers, may have engaged in criminal conduct when he surreptitiously recorded a phone conversation between Mr. Soleymanlou and Jon Schwartz, President and COO of NewSpring.  *Id.* at 7.  During a telephone conference held on August 2, 2022, the Court orally advised the parties that Mr. Carter's motion would be denied.

### C.  Procedural History

RainMakers filed the instant suit on August 12, 2021, alleging breach of contract and misappropriation of trade secrets.  Doc. 1.  RainMakers filed a motion on December 17, 2021, to revoke the *pro hac vice* admission of Mr. Leary.  Doc. 53.  On January 14, 2022, RainMakers filed a motion to compel discovery concerning all investments made by any one of the thirty-one Introduced Investors.  Doc. 58.  In response, NewSpring filed a cross-motion for partial summary judgment, asking this Court to rule on whether the advisory agreement and addendum "required that services be provided [by RainMakers] in order to trigger a fee obligation."  Doc. 60 at 13.

On February 4, 2022, NewSpring submitted a statement of undisputed material facts pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1").  Doc. 61; Local R. 56.1(a). Among other facts, this statement provided that:  the parties executed the advisory agreement for the purpose of raising money for the Fund; RainMakers sent NewSpring a list of its Introduced Investors; RainMakers only facilitated introductions with three of the Introduced Investors; New2nd expressed an interest in investing in both the Fund and NewSpring Holdings; the parties

executed the addendum to cover this potential investment by New2nd in NewSpring Holdings, with no intention to alter the rest of the advisory agreement; New2nd never invested in NewSpring Holdings.  Doc. 61.  NewSpring's 56.1 statement was supported by declarations from Rachel Soloman, Jon Schwartz, and Travis Escobedo.  *Id.*  RainMakers submitted its response to NewSpring's statement of undisputed material facts on August 16, 2022.  Doc. 65-1. The response did not include supporting affidavits, documents, or any other type of admissible evidence.  *Id.*

## II.   DISQUALIFICATION OF COUNSEL

### A.  Discussion

As noted, the Court has already advised the parties that this motion is denied. "Admission *pro hac vice* 'is not a right but a privilege, the granting of which rests in the sound discretion of the presiding judge.'"  *Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120 (KMW) (THK), 2003 WL 22339357, at *3 (S.D.N.Y. Oct. 14, 2003) (citation omitted). Disqualification, here through the revocation of *pro hac vice* admission, is considered a "drastic measure" because it "impinges on a party's right to select counsel of its choosing."  *Capponi v. Murphy*, 772 F. Supp. 2d 457, 471 (S.D.N.Y. 2009) (citation omitted).  Accordingly, "the party seeking to disqualify an opposing party's counsel" is required to meet "a high standard of proof." *Doe v. Polise Consulting Engineers, D.P.C.*, No. 21 Civ. 609 (CM), 2021 WL 4555036, at *2 (S.D.N.Y. Oct. 5, 2021).

RainMakers argues that Mr. Leary threatened to present criminal charges solely to gain an advantage in civil litigation, and that he claimed to be the attorney of a potential witness in order to prevent an adversary from contacting the witness.  In the course of email communications concerning the foregoing disputes, counsel for NewSpring referred to counsel

for RainMakers as a "shit head."  NewSpring responded that Mr. Leary's colorful language was

a reaction to disparaging comments made by counsel for RainMakers, and argues that the other

allegations are unfounded.

At a telephone conference held on August 2, 2022, the Court noted that Mr. Leary

apologized for his conduct and stated that the lack of professionalism would not reoccur.  Based

on the record, the Court finds that the admitted facts are insufficient to warrant "imping[ing] on a

party's right to select counsel of its choosing."  *Capponi*, 772 F. Supp. 2d at 471 (citation

omitted).

## III.   PARTIAL SUMMARY JUDGMENT

### A.  Standard for Partial Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the

evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno*

*v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint*

*Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might

affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary

judgment is first responsible for demonstrating the absence of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party meets its burden, "the

nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue

of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F.

Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145

(2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).[3]

### B.  Discussion

There is no dispute that, beyond providing Northleaf's name in its list of Introduced Investors, RainMakers did not provide any services to NewSpring in connection with Northleaf's investment in Project Tiger.  RainMakers argues that the addendum to the advisory agreement

---

[3] To assist the Court in its determination as to whether there exist any genuine issues of material fact, Local Rule 56.1 requires a party moving for summary judgment to submit a statement of the material facts that it contends are not genuinely in dispute, Local R. 56.1(a), and requires the opposing party to submit a statement specifically responding to the assertion of each purported undisputed fact by the movant.  Local R. 56.1(b); *see also Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties.").  Each of the parties' respective statements of material fact must be supported by a citation to admissible evidence in the record.  Local R. 56.1(d); *see also* Fed. R. Civ. P. 56(c)(1)(A) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  Statements of material fact set forth by the moving party will be deemed admitted for purposes of the motion "unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Rule 56.1(c).

Here, NewSpring properly filed and served a Statement of Undisputed Facts in support of its motion consisting of fourteen paragraphs.  Doc. 61.  RainMakers did not dispute ¶ 2, but disputed the other thirteen.  Doc. 65-1.  However, in denying ¶¶ 4, 5, 6, 8, 9, 10, and 11, RainMakers did not support the denial with reference to any evidence in the record.  Doc. 65-1.  Accordingly, these seven statements are deemed admitted for purposes of this motion.  Local R. 56.1(c); *see also T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").

entitled RainMakers to a placement fee following the investment of Northleaf in NewSpring, without a requirement that RainMakers provided services. Doc. 65 at 7–8. In response, NewSpring argues that the advisory agreement and addendum did require services by RainMakers, beyond merely providing the list of Introduced Investors, in order for RainMakers to earn fees. As such, NewSpring seeks partial summary judgment to confirm that services were required under the terms of the advisory agreement and addendum in order for RainMakers to be entitled to fees.

NewSpring submitted a statement of undisputed material facts providing that the parties executed the advisory agreement for the purpose of raising money for the Fund, and that RainMakers only facilitated introductions with three of the Introduced Investors. During the course of their discussions, New2nd expressed an interest in investing in both the Fund and NewSpring Holdings. RainMakers and NewSpring therefore executed the addendum to cover the potential investment by New2nd in NewSpring Holdings. Doc. 61.

In response, RainMakers disputes all but one of the paragraphs in NewSpring's 56.1 statement. However, its responses are not properly supported by reference to admissible evidence; they are mere denials. For several points, RainMakers disputes the submitted facts simply because those facts "rely upon, are based on, or refer to" the declarations from Mr. Schwartz or Mr. Escobedo. Doc. 65-1 ¶¶ 4–6, 8–11. Of course, the presentation of such evidence is precisely what FRCP 56 requires. The 56.1 statements not properly disputed are therefore deemed admitted.

Turning to the merits of RainMakers' legal response, RainMakers argues that the case *Bison Capital Corp. v. ATP Oil & Gas Corp.* supports its claim that it should be paid a placement fee. *See Bison Cap. Corp. v. ATP Oil & Gas Corp.*, No. 10 Civ. 714 (SHS), 2011 WL

8473007 (S.D.N.Y. Mar. 8, 2011), *aff'd*, 473 F. App'x 40 (2d Cir. 2012).  However, *Bison* is distinguishable, specifically in that the plaintiff in that case did provide some services that were related to the later transactions.  *Id.* at *1–3.  RainMakers also argues that NewSpring excluded it from dealings with other investors by failing to request advisory services and by hiring another agent, Triago.  Doc. 58 at 10.  In support, RainMakers cites *CIBC World Markets Corp. v. TechTrader*, a case involving an exclusive agreement.  Doc. 65 at 9–10.  In *CIBC*, "the parties executed an agreement . . . pursuant to which TT retained CIBC as its exclusive financial advisor in connection with a possible sale or merger and acquisition of TT."  *CIBC World Markets Corp. v. TechTrader, Inc.*, 183 F. Supp. 2d 605, 607 (S.D.N.Y. 2001).  However, RainMakers fails to acknowledge the advisory agreement's provision that "NSH hereby engages RainMakers as a non-exclusive advisor with respect to a Transaction."  Doc. 60-2 at 2.  NewSpring correctly identifies the inapplicability of RainMakers' cited case law in the context of this advisory agreement's non-exclusivity provision.  Doc. 66 at 9–13.

Additionally, on the argument of whether RainMakers is a "broker" or a "finder," RainMakers' argument for fees fails primarily because the plain text of the advisory agreement requires services to be performed.  "A court should not interpret a contract in a manner that would be 'absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties.'"  *Samba Enterprises, LLC v. iMesh, Inc.*, No. 06 Civ. 7660 (DC), 2009 WL 705537, at *5 (S.D.N.Y. Mar. 19, 2009) (quoting *In re Lipper Holdings, LLC*, 1 A.D.3d 170, 171 (2003)), *aff'd sub nom. Samba Enterprises, Ltd. v. iMesh, Inc.*, 390 F. App'x 55 (2d Cir. 2010).  Even the case law that RainMakers cites makes clear that the question of whether it would be entitled to a commission depends on "the terms of its engagement."  *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 850 F. App'x 38, 41 (2d Cir. 2021).  RainMakers further argues that a "finder" could earn

10

its commission "by making only two phone calls." *Train v. Ardshiel Assocs., Inc.*, 635 F. Supp. 274, 279 (S.D.N.Y.) (quoting *Minichiello v. Royal Bus. Funds Corp.*, 18 N.Y.2d 521, 527 (1966)), *aff'd sub nom. Train v. Ardshiel Assoc.*, 805 F.2d 391 (2d Cir. 1986). However, even if RainMakers were a "finder," and it is not, it has not sufficiently disputed the statement of material facts from NewSpring demonstrating that RainMakers failed to make even those two phone calls. That is, "RainMakers only facilitated introductions with three investors," and Northleaf was not among these three investors. Doc. 61 ¶ 5.

"Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Queens Ballpark Co., LLC v. Vysk Commc'ns*, 226 F. Supp. 3d 254, 258 (S.D.N.Y. 2016) (quoting *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000)). The Court finds that the language of the advisory agreement clearly provides that RainMakers cannot earn fees under the agreement without "[i]nitiating contact with Introduced Investors," "[f]acilitating discussions between NSH and Introduced Investors," and "counseling NSH" as to strategy and tactics with Introduced Investors. Doc. 60-2 at 2. Furthermore, the clear language of the addendum incorporates those service requirements: "[e]xcept as expressly supplemented herein, all terms, covenants and provisions of the Agreement shall remain unaltered." Doc. 60-3 at 2.

The Court finds that NewSpring has demonstrated that "RainMakers only facilitated introductions with three investors; Industry Ventures, J.P. Morgan, and New2nd Capital," Doc. 61 ¶ 5, and was required to provide specific services to earn fees. Accordingly, NewSpring's motion for partial summary judgment is granted.

IV.    **DISCOVERY**

A.  **Standard for Discovery**

Federal district courts have broad discretion in deciding motions to compel.  *See Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999).  The scope of discovery is generally limited to any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

The burden of demonstrating relevance is on the party seeking discovery.  *Fort Worth Employees' Retirement Fund v. JP. Morgan Chase & Co.*, 297 F.R.D. 99, 102–03 (S.D.N.Y. 2013) (citing *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 363 (S.D.N.Y. 2010); *Mandell v. Maxon Co.*, No. 06 Civ. 460 (RWS), 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007)).  If the information sought is relevant, then "[t]he party resisting discovery bears the burden of showing why discovery should be denied." *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009).  "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information."  *Melendez v. Greiner*, No. 01 Civ. 7888 (SAS) (DF), 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003).  Rather, "[a] party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal

construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" *Fort Worth Employees' Retirement Fund*, 297 F.R.D. at 102–03 (alteration in original) (quoting *Vidal v. Metro-N. Commuter R. Co.*, No. 12 Civ. 248 (MPS), 2013 WL 1310504, at *1 (D. Conn. Mar. 28, 2013)).

### B.  Discussion

RainMakers seeks discovery relating to all investments made by any of the thirty-one Introduced Investors, not limited to Northleaf, and the three Introduced Investors—the only ones with whom meetings were facilitated by RainMakers.  RainMakers argues that it has satisfied its burden of demonstrating the relevance of all of these investments.  NewSpring argues that, because services were required in order to trigger fee obligations, broad discovery into other investments for which RainMakers did not provide services would be burdensome and unwarranted.  Additionally, NewSpring notes that it has already produced all of the relevant documents relating to Northleaf, the three Introduced Investors, and investments in the Fund.

Given the resolution of the question for partial summary judgment on services being required for earning fees, and the limited number of investors with whom RainMakers facilitated meetings, additional discovery is unwarranted.  Thus, RainMakers' motion to compel discovery is denied.

### V.      CONCLUSION

For all these reasons, RainMakers' motions to disqualify counsel and to compel discovery are DENIED, and NewSpring's cross-motion for partial summary judgment is

GRANTED.  The Clerk of Court is respectfully directed to terminate the motions, Docs. 53 and

59.

SO ORDERED.

Dated:      September 30, 2022
            New York, New York

_____
            Edgardo Ramos, U.S.D.J.