UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

RAINMAKERS PARTNERS, LLC,

                Plaintiff,

– against –

NEWSPRING CAPITAL, LLC,
NEWSPRING HOLDINGS, LLC, *and*
NSH III MANAGEMENT COMPANY, LLC,

                Defendants.

**OPINION & ORDER**

21-cv-6800 (ER)

R<small>AMOS</small>, D.J.:

      RainMakers Partners, LLC, a private equity firm, brings this action against NewSpring Capital, LLC ("NewSpring Capital"), NewSpring Holdings, LLC ("NewSpring Holdings"), and NSH III Management Company, LLC ("NSH") (collectively, "NewSpring") for breach of contract and misappropriation of trade secrets. Doc. 1. In short, RainMakers alleges that NewSpring failed to pay RainMakers a placement fee that it earned pursuant to the parties' advisory agreement, and that it unlawfully shared a proprietary investor list with third parties. *Id.*

      The Court granted NewSpring's motion for partial summary judgment and denied RainMakers' motions to disqualify counsel and compel discovery on September 30, 2022. *RainMakers Partners, LLC v. NewSpring Capital, LLC*, No. 21 Civ. 6800 (ER), 2022 WL 4626492 (S.D.N.Y. Sept. 30, 2022). Now before the Court is NewSpring's motion for summary judgment as to all claims in this action. Doc. 79. For the reasons set forth below, the motion is GRANTED.

I.  BACKGROUND

The facts underlying this action are discussed in the Court's September 2022 Opinion. They are largely reproduced here in light of the pending motion. The Court adds additional relevant background.

A.  Factual Background

i.  The Parties' Agreement

RainMakers and NewSpring Capital are both private equity firms. Docs. 1, 16. In 2019, NSH sought to raise capital for NewSpring Health Capital III, L.P. (the "Fund"). In accordance therewith, on April 2, 2019, NSH engaged RainMakers as a "non-exclusive advisor" to help fundraise with respect to the transaction.[1] Doc. 60-2 at 2. In an advisory agreement signed on that date, RainMakers agreed to provide advisory services to NSH. *Id.* Specifically, the advisory agreement stated:

> RainMakers shall provide the following services:
>
> (a) Initiating contact with Introduced Investors;
>
> (b) Facilitating discussions between NSH and Introduced Investors by coordinating and participating in conference calls and/or meetings between the parties.
>
> (c) Counseling NSH as to the strategy and tactics for negotiating with Introduced Investors, and if requested by NSH, participating in such negotiations[.]

*Id.*

The advisory agreement defined "Introduced Investor" as an investor that had been "identified by RainMakers and approved by NSH for introduction by RainMakers." *Id.* It further provided that, "[i]n addition, an Investor shall be deemed to be an Introduced Investor if

---

[1] The advisory agreement defines "Transaction" as "any transaction . . . whereby, directly or indirectly, an Introduced Investor . . . makes an investment in the Fund." Doc. 60-2 at 2.

2

NSH participates in a teleconference or a meeting scheduled by RainMakers with such Investor with respect to a potential investment in the Fund." *Id.* Compensation for RainMakers under the agreement included a retainer fee, as well as possible placement fees and successor fees. *Id.* at 3. NSH agreed to pay RainMakers a placement fee if "one or a series of Transactions is consummated by NSH with one or several Introduced Investors." *Id.*

The advisory agreement also included confidentiality provisions. Doc. 60-2 at 4. As relevant to the dispute, Section 8(b) of the agreement provided that "[t]he list of Introduced Investors shall be considered confidential and shall remain the property of RainMakers, and may not be used, copied, or otherwise reproduced for use in any way except in connection with services to be performed hereunder." *Id.* It further stated that "[i]n particular, NSH shall not introduce Introduced Investors to third parties, whether such introduction is for profit or not." *Id.*

RainMakers provided NewSpring with a list of Introduced Investors that included thirty-one entities. *Id.* at 9. According to NewSpring, it had "prior contacts or relationships with at least 20 of the 31 investors listed."[2] Defendants' Memorandum of Law in Support ("Defs.' Mem in Supp."), Doc. 81 at 8; *see also* Doc. 16-4. Critically here, RainMakers did *not* "facilitate[e] discussions between [NewSpring]" and Northleaf Capital Partners, Ltd. ("Northleaf"), one of the

---

[2] In a sworn declaration, NewSpring Director of Fundraising Travis Escobedo testified that he notified RainMakers that "NewSpring had prior existing relationships with some of the investors listed on the Investor List." Declaration of Travis Escobedo ("Escobedo Decl."), Doc. 60-6 ¶ 7. The record contains notes documenting sales calls between NewSpring and certain entities on the list, some of which predate the execution of the advisory agreement. Doc. 16-4. The parties refer to some of these records as "SalesForce" notes. *See, e.g.*, Doc. 82-3.

Notwithstanding that context, RainMakers underscores the value of its services by noting that, although NewSpring knew several of the Introduced Investors, "in our business, knowing the name of an investor is not enough. For instance, the whole world knows that JP Morgan (Introduced Investor No. 22) is an investment banker—But you cannot simply call the main telephone number of JP Morgan and announce that you want to speak with its President [] about investing in your fund; you must have a relationship with the appropriate people." Declaration of CEO Djamchid (Jim) Soleymanlou ("Soleymanlou Decl."), Doc. 84 ¶ 9. In other words, RainMakers argues that the value of the list came from *Soleymanlou's* connections with the listed investors, not merely from the compilation of the names of the investors.

3

entities on the list, in connection with the advisory agreement.[3] Doc. 61 ¶ 5. NewSpring highlights, moreover, that of the entities on the list, RainMakers only facilitated meetings with three—New2nd Capital ("New2nd"), Industry Ventures, and J.P. Morgan—and not with the other twenty-eight entities. Id.

An addendum to the advisory agreement was executed on June 4, 2019. Doc. 60-3. According to NewSpring, the parties executed the addendum because New2nd, one of the three entities that RainMakers did facilitate a meeting with, "was interested in jointly investing in both [the Fund], as well as [NewSpring Holdings]." Doc. 61 ¶ 6. NewSpring references an email sent by Soleymanlou to show that the addendum was intended to cover the eventuality that New2nd would invest in NewSpring Holdings. Id. ¶¶ 7, 11. The addendum extended the definition of "Fund" to "any investment vehicle or co-investments managed or offered by NewSpring Capital, LLC," and specified that such investments would be "subject to a Placement Fee as described in section 4-b of the Agreement." Doc. 60-3 ¶ 2. The addendum also stated that "[e]xcept as expressly supplemented herein, all terms, covenants and provisions of the Agreement shall remain unaltered." Id. ¶ 3.

The Fund closed in February 2020. Doc. 60-5 ¶ 24. Ultimately, none of the three Introduced Investors that met with NewSpring invested in the Fund, and New2nd did not invest in NewSpring Holdings. Doc. 61 ¶ 8.

---

[3] In fact, NewSpring contends that it "communicated with Northleaf on several occasions on different deals well prior to April 2019." Defs.' Mem in Supp. at 7. It cites to the declaration of Jon Schwartz, the President and Chief Operating Officer of NewSpring, which states that meetings between NewSpring and Northleaf took place in June 2016, May 2017, and June 2017. Id.; Declaration of Jon Schwartz ("Schwartz Decl."), Doc. 16-2 ¶¶ 6–7; see also Doc. 16-4 (listing firms on the Introduced Investor list and the dates of NewSpring's "first contact" with those firms).

### ii. Project Tiger

On June 14, 2021, more than two years after the parties signed the advisory agreement, and fifteen months after the Fund closed, NewSpring announced a $120 million investment by Northleaf in NewSpring Holdings pursuant to a transaction known as "Project Tiger." Doc. 6-4. Project Tiger was separate from the Fund, and was meant to recapitalize an existing investor of NewSpring Holdings. Doc. 16 at 11. For Project Tiger, NewSpring had worked with another agent, Triago Americas, Inc. ("Triago"), which facilitated the involvement of Northleaf. Doc. 60 at 5. Importantly, NewSpring and Triago executives both stated under oath that "at no time did NewSpring share any 'Confidential Introduced Investor' List (or any other work product created by RainMakers) with Triago." Defs.' Mem. in Supp. at 10 (citing Schwartz Decl. ¶ 30; Declaration of Matt Swain ("Swain Decl."), Doc. 16-1 ¶ 5 (stating that NewSpring did not "ever" provide Triago with any documentation created by RainMakers). And Emil Fajersson, a Director at Northleaf who served as "the investment deal team leader for Project Tiger," testified that "Northleaf's participation in Project Tiger arose [from] Northleaf's historical relationship with Triago," not through any efforts made by RainMakers.[4] Declaration of Emil Fajersson ("Fajersson Decl."), Doc. 80-11 ¶¶ 9–16.

On July 1, 2021, several weeks after NewSpring announced Northleaf's investment in Project Tiger, RainMakers emailed NewSpring requesting a $2.4 million placement fee. Doc. 6-5. The amount RainMakers requested equaled the amount that it would have been entitled to for facilitating the transaction under the terms of the advisory agreement. NewSpring answered via

---

[4] Fajersson noted that, "in preparing [his] declaration, [he] learned from co-workers that RainMakers contacted Northleaf regarding a separate fundraise involving HealthCare Fund III in 2019" and, to his knowledge, "Northleaf declined to participate." Fajersson Decl. ¶ 15. Fajersson underscored that he "was never presented or pitched by RainMakers with regard to Project Tiger." Id. ¶ 12.

5

email on July 2, 2021, responding that RainMakers did not provide the services required for the placement fee. Doc. 6-6.

### B. Procedural History

RainMakers filed the instant suit on August 12, 2021, alleging breach of contract and misappropriation of trade secrets. Doc. 1. It also moved for a temporary restraining order, which the Court denied. *See* Min. Entry dated Aug. 24, 2021; Doc. 22. NewSpring thereafter filed an answer on September 14, 2021. Doc. 25. The parties proceeded to discovery, which was to be completed by July 29, 2022. *See* Doc. 28.

Several months later, on December 17, 2021, RainMakers filed a motion to revoke the *pro hac vice* admission of Mr. Leary, counsel for NewSpring, due to alleged abusive conduct. Doc. 53. Thereafter on January 14, 2022, it filed a motion to compel discovery concerning *all investments* made by *any one* of the thirty-one Introduced Investors. Doc. 58. In response, NewSpring filed a cross-motion for partial summary judgment, asking this Court to rule on whether the advisory agreement and addendum "required that services be provided [by RainMakers] in order to trigger a fee obligation." Doc. 60 at 13.

On September 30, 2022, the Court granted NewSpring's motion for partial summary judgment and denied RainMakers' motions to disqualify counsel and compel discovery. *RainMakers Partners, LLC*, 2022 WL 4626492, at *1–6. As relevant here, the Court concluded that "RainMakers did not provide any services to NewSpring in connection with Northleaf's investment in Project Tiger," and that "the plain text of the advisory agreement requires services to be performed." *Id.* at *4. The Court also denied RainMakers' discovery motion, noting that "additional discovery is unwarranted," given "the resolution of the question for partial summary

judgment on services being required for earning fees, and the limited number of investors with whom RainMakers facilitated meetings." *Id.* at *6.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion for summary judgment, "the non-moving party must set

forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

As relevant to the motion now before the Court, Rule 56(d) provides that "[i[f a nonmovant shows by affidavit or declaration that, for specified, reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).  "It is well established that 'the trial court may properly deny further discovery' under Rule 56(d) 'if the nonmoving party has had a fully adequate opportunity for discovery.'" *Moccia v. Saul*, 820 F. App'x 69, 70 (2d Cir. 2020) (quoting *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989)).  Mere assertions that evidence supporting a plaintiff's allegations are "in the hands of the defendant" are insufficient to justify a denial of a motion for summary judgment under the rule. *Lerwick v. Kelsey*, 150 F. App'x 62, 65 (2d Cir. 2005) (internal quotation marks and citation omitted).

### B. DISCUSSION

NewSpring moves for summary judgment as to all three counts in the Complaint.  Defs.' Mem. in Supp.  The Court takes each count in turn and grants the motion in its entirety.

#### i. RainMakers Failed to Oppose the Motion as to Count I

First, the Court grants the motion as to Count I of the complaint, Doc. 1 ¶¶ 51–58.  As NewSpring highlights, RainMakers only opposed the motion as to the "second and third claims for relief," and therefore abandoned Count I.  Defendants' Reply Memorandum ("Defs.' Reply Mem."), Doc. 86 at 4 n.1.

To support a finding of abandonment, NewSpring must show that RainMakers either (1) raised a claim and failed to pursue it, or (2) failed to respond to an argument that it raised.  *See Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 644–46, No. 12 Civ. 6881 (KMK), 2015 WL 1400088, at *15 (S.D.N.Y. Mar. 27, 2015) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (quoting *Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009)) (internal quotation marks omitted); *Silverman v. Miranda*, 116 F. Supp. 3d 289, 303 (S.D.N.Y. 2015), *aff'd sub nom. Silverman v. Teamster Loc. 210 Affiliated Health & Ins. Fund*, 725 F. App'x 79 (2d Cir. 2018), *as amended* (June 7, 2018).

Here, RainMakers failed to respond to NewSpring's motion for summary judgment as to Count I of the complaint alleging breach.  That allegation is thus properly dismissed.

### ii.  Count II – Breach of Confidentiality Clause

NewSpring also moves for summary judgment as to Count II of the complaint, namely, RainMakers' claim that NewSpring breached the confidentiality clause of the advisory agreement by improperly using and granting third-party access to the Introduced Investor list. Doc. 1 ¶¶ 59–67.

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (citations omitted). Importantly, as the Court emphasized in its September 2022 Opinion, courts "should not interpret a contract in a manner that would be 'absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties.'" *Samba Enterprises, LLC v. iMesh, Inc.*, No. 06 Civ.

9

7660 (DC), 2009 WL 705537, at *5 (S.D.N.Y. Mar. 19, 2009) (quoting *Lipper Holdings, LLC v. Trident Holdings, LLC*, 1 A.D.3d 170, 171 (2003)), *aff'd sub nom. Samba Enterprises, Ltd. v. iMesh, Inc.*, 390 F. App'x 55 (2d Cir. 2010).

In support of its motion, NewSpring argues that Count II "must be dismissed as Plaintiff cannot identify any evidence of a breach." Defs.' Mem. in Supp. at 15. It underscores three key facts: first, Northleaf's investment came about "as a result of Triago's historical relationship with Northleaf;" second, Rainmakers was uninvolved in the investment; and third, NewSpring did not, at any point, share any investor list—or any other work product created by RainMakers—with Triago. *Id.* at 16. In response, RainMakers points out that the confidentiality provision of the agreement specifies that the list of Introduced Investors was designated to be confidential, and it highlights SalesForce records that log the date and nature of a number of sales calls between NewSpring and several investors on the list. Plaintiff's Memorandum of Law in Opposition ("Pl.'s Mem. in Opp'n"), Doc. 83 at 16–18.

The Court grants the motion for summary judgment as to Count II. While it is true that the advisory agreement indicated that the Introduced Investor list would be confidential, Doc. 60-2 at 4, there is *no* evidence on the record to indicate that NewSpring improperly shared the list or otherwise breached the confidentiality clause at Section 8(b) of the agreement.

Critically here, witnesses from Triago and NewSpring specifically testified that *no* investor list had been shared, Schwartz Decl. ¶ 30; Swain Decl. ¶ 5, and Northleaf's deal team leader affirmed that its Project Tiger investment did not derive from *any* introduction on behalf of RainMakers, Fajersson Decl. ¶¶ 9–16. That Northleaf was one of the firms named in the Introduced Investor list provided to NewSpring in 2019 does not create a genuine dispute for trial. Indeed, the list contained 31 prominent financial firms. Doc. 60-2 at 9. RainMakers'

reading of the confidentiality clause of the agreement would mean that *any* time one of those firms invested in a future NewSpring fund, a breach of the agreement would necessarily follow. Such a reading is untenable given that, as even RainMakers' CEO pointed out, "the whole world" knows about firms on the Introduced Investor list. Soleymanlou Decl. ¶ 9.

Nor do the SalesForce notes that show contact between NewSpring and various firms on the Introduced Investor list preclude summary judgment here, particularly as records show that NewSpring had made initial contacts with many entities on the list years before the advisory agreement was signed. *See* Doc. 82-3; Doc. 16-4 at 2; *see also* Soleymanlou Decl. ¶¶ 8–9; Escobedo Decl. ¶¶ 6–7. The record contains no evidence tying the contacts documented in the SalesForce notes—or any other communications between NewSpring and firms on the Introduced Investor list that took place outside the presence of RainMakers—with *any* form of disclosure of the list.[5] The record does, however, show that: (1) the parties' agreement was non-exclusive, Doc. 60-2 at 2; (2) RainMakers knew that NewSpring had existing relationships with several firms on the list, Escobedo Decl. ¶ 7; and (3) Northleaf's investment in Project Tiger stemmed from Triago's introduction, which came about from Triago's prior existing relationship with Northleaf, not through the use of the Investor List or any other effort by RainMakers, Doc. Fajersson Decl. ¶¶ 9–16. Given that context, records pertaining to communications between NewSpring and the firms on the list—absent any other evidence of the *use* of the list—are insufficient for a reasonable jury to conclude that there was a violation of Section 8(b) of the parties' agreement. *See* Doc. 60-2 at 4.

---

[5] In its opposition, RainMakers highlights several entries showing that NewSpring contacted five investors on the list in 2019 and 2020. Pl.'s Mem. in Opp'n at 17. However, Northleaf was not one of those investors. *Id.* And, as RainMakers itself points out, those recorded contacts did not relate to the process of raising capital for the Fund. *Id.*; *see also* Doc. 60-2 at 2.

Accordingly, NewSpring's motion is granted as to Count II.  *See generally Anderson*, 477 U.S. at 252.

### iii.  Count III – Trade Secrets Misappropriation

Summary judgment is also proper as to Count III of the complaint.  Doc. 1 ¶¶ 68–80.  No reasonable jury could find that NewSpring improperly misappropriated the Introduced Investor list as RainMakers contends.  *Anderson*, 477 U.S. at 248.

To state a claim for misappropriation of a trade secret, "a party must show an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." *Medidata Solutions, Inc. v. Veeva Sys. Inc.*, No. 17 Civ. 589, 2018 WL 6173349, at *4 (S.D.N.Y. Nov. 26, 2018) (citations omitted).  Improper means include "inducement of a breach of duty to maintain secrecy[,]" such as a contractual agreement not to disclose information.  *Id.* (citations omitted).

Trade secrets are defined as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes[.]"  18 U.S.C. § 1839(3).  However, to qualify as a trade secret, the owner of the trade secret must have taken "reasonable measures" to keep it a secret and the trade secret itself must acquire economic value from not being generally known or easily obtained by others who would gain economic value from the use or disclosure of it.  *Id.*

Here, the parties dispute whether the Introduced Investor list amounts to a trade secret and whether it was misappropriated. Defs.' Mem. in Supp. at 17–20; Pl.'s Mem. in Opp'n at 19–25; Defs.' Reply Mem. at 11–13. As noted and discussed above, there is *no evidence* that NewSpring disclosed or otherwise misused the list. Nor does RainMakers' naked assertion that "[i]t is not at all hard to believe that someone at NSH would have provided someone at Triago with information concerning the Northleaf group that RainMakers knew and Triago didn't know" create a genuine dispute for trial. Pl.s' Mem. in Opp'n at 24. Indeed, the record clarifies that Northleaf and Triago had a pre-existing "historical" relationship, *see* Fajersson Decl. ¶ 9, Schwartz Decl. ¶ 28, and RainMakers did not even introduce Northleaf to NewSpring for the purposes of the parties' advisory agreement, *see* Doc. 61 ¶ 5; Pl.'s Mem. in Opp'n at 12; *see also* Soleymanlou Decl. ¶ 9 (asserting that the value of the list came from the relationships between RainMakers and the listed entities, not just the provision of the names of the investors, which may have been known by "the whole world"). There is simply no genuine dispute for trial here.

Because the Court concludes that no reasonable jury could determine that a misappropriation took place, it need not resolve whether or not the list amounts to a trade secret. NewSpring's motion is also granted as to Count III.

### iv. RainMakers' Rule 56(d) Argument

Finally, RainMakers argues that it is entitled to discovery pursuant to Rule 56(d). It contends that relevant discovery remains outstanding, including: (1) a formal interrogatory request; (2) a formal document production request; and (3) several depositions.[6] Pl.'s Mem. in Opp'n at 25; Doc. 82 ¶¶ 23–25. In response, NewSpring notes that "[a]part from depositions, the

---

[6] Notably, RainMakers takes the position that *no* discovery has been produced as to Counts II and III of the complaint. Pl.s' Mem. in Opp'n at 15. In support of that contention, RainMakers argues that the Court's prior order denying its discovery request related solely to Count I of the complaint. *Id.*

13

discovery outlined . . . has already been completed by the parties, would not lead to the discovery of any material information (such as the proposed interrogatories relating to identi[ty] of custodians, or as discussed, is foreclosed by the Court's ruling (such as the fishing expedition into NewSpring's other transactions)." Defs.' Reply Mem. at 13; *see also RainMakers Partners, LLC*, 2022 WL 4626492, at *5–6. NewSpring further underscores that RainMakers "failed to explain why [it] has failed, to date, to obtain this discovery and why those efforts were unsuccessful." *Id.*

The Court agrees with NewSpring and denies RainMakers' discovery requests pursuant to Rule 56(d). Indeed, it had "a fully adequate opportunity to obtain discovery" after the Court adopted the parties proposed case management plan in September 2021. *Saul*, 820 F. App'x at 70. And RainMakers does not provide a sufficient explanation as to why it failed to request the discovery it now seeks during that extensive time period. Fed. R. Civ. P. 56(d). Simply put, nearly two years after the filing of the complaint, there is no evidence suggesting that NewSpring improperly disclosed or otherwise used RainMakers' Introduced Investor list, nor is there anything to indicate that NewSpring or other parties are in possession of relevant evidence that RainMakers has been prevented from obtaining. For these reasons, RainMakers' Rule 56(d) arguments are similarly denied.

### III.    CONCLUSION

For all the reasons stated herein, NewSpring's motion for summary judgment as to all three claims in the complaint is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 79, and to close the case.

IT IS SO ORDERED.

Dated:  May 18, 2023
        New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.